# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed November 7, 1925.

### EVANS
### VS.
### EVANS.

*Haman, Cook, Chesnut & Markell* for plaintiff.

*Janney, Ober, Slingluff & Williams* for defendant.

STANTON, J.—

The matter now before the Court is a petition for the allowance of alimony pendente lite, and an injunction to restrain the defendant from disposing of his property pending the final hearing in this cause.

Alimony, strictly speaking, does not comprehend support money for the dependent children. There is a wife and

two dependent children to be considered. At this time it would hardly seem necessary to take into account the needs of the son, Holden, Jr., who is entered in a boarding school and his support provided for until the next semester in February, except possibly for incidental expenses. This case can be disposed of before that time, when his custody and support will be finally determined. The daughter Eleanor returned to this country in August of this year, after about two years spent abroad in boarding and finishing schools, and travel. Mrs. Evans also returned to this country in August, of this year, after spending about the same period in living abroad, as a result of differences between her and her husband.

While living apart, Mrs. Evans testifies that he has allowed her $1,000 per month for her support; and paid the expenses of Holden, Jr., who was also in school in England, and his daughter Eleanor. The allowance to Mrs. Evans continued through the month of August, of this year, and Mr. Evans notified her that beginning September 1st he would reduce this allowance to $500 per month.

The wife has filed a bill for divorce a mensa and for alimony and custody of the children and support money for them.

A review of the testimony in this case will disclose Mr. Evans to be a man of large means—more than a million dollars—with large earning ability, which has produced enormously in past years. His reason for the reduction of the allowance to the wife is the fear that his income for the future will be much reduced, and that he must retrench on his spendings.

The record shows actual expenditures of forty to fifty thousand dollars, and is only a partial record at that, for it does not cover anything spent by Mr. Evans on himself, which must have been considerable, because he has taken at least one or two trips to Europe without his family, within the past two years, and purchased women's jewelry while abroad.

The amount drawn by him from the Enterprise Investment Company $56,000 last year, which was independent of money received by him from any other source. This year, if he draws from this same source $42,000 or $6 per share dividend, as is contemplated or

suggested in the argument, and receives $12,000 as president of the Interocean Oil Company, irrespective of any other sources of income, he will have a gross income of $54,000. Mr. Evans shows fixed charges aggregating about $38,000, and he claims that after he pays his fixed charges he will practically be without any excess funds. His testimony would make it appear that his average net income for five years past has been but little over $7,000 each year, and yet he has spent five or six times that amount that can be accounted for in the testimony filed in this case.

The Enterprise Investment Company is Mr. Evans' corporation. A Court of Equity will look back of the form to the substance. It is a corporation formed to take over his stocks and bonds and other personal property; and whatever amount he desires for current expenses he directs the president of the Enterprise Investment Company to declare a dividend in such amount as Mr. Evans determines, and each year, since its incorporation, it has paid his withdrawals, and has put a very large sum to surplus account. It is the earnings of this corporation which gives an index of the income of the defendant, and it has averaged over $200,000 for the past three years. Mr. Evans claims that many of these stocks are frozen securities—securities of large intrinsic worth but without market value—but one of them has repaid all that it originally cost, and has prospects of a dividend of 7 per cent. this year (Mrs. Evans says in an affidavit that a 7 per cent. dividend was declared October 26th) which will represent $14,000 from this one source. However, if any of these securities are "frozen," the fact that the husband's property is largely unproductive of income should not make the arm of the Court powerless to adequately provide for the wife and children. His property will be treated for the purpose of alimony allowance, as if it produces a fair return on the amount of the investment.

His property, and his ability to earn, make up his estate on which allowance of alimony is based. Mr. Evans is in the prime of his life, and now in his most productive years, and Mrs. Evans is some years his junior.

Another index to his ability to earn and spend, is the money which he has

given to Mrs. de Vallier. The Court is not now concerned with the character of his association with this woman. But the record shows that in 1924 he gave her over $17,000; and in seven months of this year, namely, from January to July 31st, he gave her nearly $16,000. How can he urge inability to continue his voluntary allowance to his wife of $1,000 per month? If he should claim he has not allowed her that much, it nevertheless would be a reasonable allowance to provide the cost of living for the wife on the scale which Mr. Evans has established and maintained. He has a very large and expensive home, with a number of servants and entertained in an elaborate manner.

The counsel for the defendant urges that a wife, circumstanced as the one in this case, should live in seclusion and retirement. That her needs should be modified accordingly. But she may not be the offending party, and is the husband to continue in a life of profligacy and extravagant spending on people who had no legal claim on him whatsoever? The argument is not persuasive under the facts in this record. Nor is the comparison of the manner of living of the wife in their early married life, or before her marriage, the rule which is applied in these cases.

Mrs. Evans now has a separate income of about $1,000 per year. The allowance of alimony pendente lite is not usually to the full measure of the rule which is followed in the allowance of permanent alimony. Considering all of the elements which enter into an allowance at this time, the Court will sign an order for alimony pendente lite and support for the daughter Eleanor for the sum of $1,250 per month, accounting from October 30th, 1925, and until the further order of this Court; with the right to Mrs. Evans to remain in the residence on Charles street, pending the hearing of this case.

The attitude of Mr. Evans as disclosed by the record, his answer setting up residence in another jurisdiction, his threats to his wife and to her counsel to make way with his property, and leave the State, and to take up residence in Europe, and claiming as he does in his testimony under oath that he is a resident of Florida, is sufficient reason for granting an injunction against the transfer of any of the capital stock of the Enterprise Investment Company, pending the final hearing in this case, and an order will be signed accordingly.